# Samuel T. Benner, Sarah Benner and Catherine Benner, Appellants, v. Jules Junker.

*Alleys—Use of alleys for business purposes.*

Where the use of an alley between two dwelling houses is not defined, limited or restricted by any covenant, the owner of one of the properties may use the alley for business purposes provided he does not interfere with its use by the owner of the adjoining property.

*Equity—Injunction—Use of neighbor's sidewalk for business purposes.*

No property owner, no matter what the necessities of his trade may be, has the right to use the sidewalk in front of his neighbor's residence for business purposes. He not only has not the right to use it continually, he has not the right to use it at all for such purpose. If he does so use it a court of equity will enjoin him.

Argued Jan. 19, 1899. Appeal, No. 343, Jan. T., 1899, by plaintiffs, from decree of C. P. No. 4, Phila. Co., Sept. T., 1897, No. 708, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Decree modified.

Bill in equity for an injunction.

The facts appear by the opinion of ARNOLD, P. J., which was as follows :

The plaintiffs seek to limit or restrain the defendant in the use of an alley between the property owned by the plaintiffs and defendant, and to prevent the defendant from using the sidewalk in front of plaintiffs' house for loading his wagons with bread before starting out to deliver the same to his customers. Complaint is also made by plaintiffs that noise is

caused by the defendant in loading his wagons at an early hour in the morning, disturbing the plaintiffs in the peaceful enjoyment of their property. The house owned and occupied by the plaintiffs, No. 1235 Locust street, and the house owned and used by the defendant for business purposes, a bread bakery, No. 1233 Locust street, were erected by two brothers in the year 1829. The plaintiffs are the children and heirs of one of the brothers, and the defendant is the successor in title of the other. When the houses were built an alley three feet wide was left open between them. This alley is built over at the second story of the houses, and the soil of it belongs to each house in equal parts, the division line running through the center of the alley. There does not appear to be any mention in the deeds or covenants in relation to the alley. Both houses were used as residences until the year 1868, when John Junker, the father of the defendant, bought one of the houses and altered it into a bakery and shop for the sale of bread. He continued in the business until 1884, when his son, the present defendant, bought the business, and has continued it since that time. The business has increased in volume, and in 1893 the defendant bought the property on the opposite side of St. James street, which is in the rear of his property on Locust street. The bread baked in the St. James street property is carried across into the Locust street property, where it is assorted, placed in baskets and carried out through the alley, and then loaded in the delivery wagons. Some idea of the extent of the business is given by his testimony, that he employs ninety persons, has twenty-nine wagons and twenty-seven push carts, pays $1,000 a week in wages, and uses 200 barrels of flour a week. He uses one oven in the Locust street property and eight in the St. James street property. The wagons are loaded in the morning, beginning about half past four, and occupying about an hour for that purpose. The plaintiffs and their witnesses say that the process of loading is conducted with great noise and confusion, disturbing them in their sleep, and that bad smells are caused by the number of horses kept standing in front of the plaintiffs' as well as the defendant's property while loading the wagons. Witnesses for the defendant, one of them his next door neighbor, say that there is no excessive noise and that it has no effect on them.

Concerning the alley, I do not find that the plaintiffs have any legal ground of complaint. The use of it is not defined, limited or restricted by any covenant, and it therefore depends upon custom and the needs of the parties entitled to use it. That it was first used as an alley between dwelling houses is no reason why it should always continue to be so used. The gradual change of a neighborhood from residential to business purposes is constantly going on, and the appurtenances, such as alleys and ways, may be used by the owners of the property when they are diverted to business purposes, with the same freedom as when they were used for residences. Nor is there any restriction upon the volume or extent of the use of the way, so long as other parties entitled to the use are not excluded from it. Both parties may use it freely and fully, but neither can appropriate the entire use to himself or exclude the other from his proper share of it. Neither can one of them, without the consent of the other, make it appurtenant to other property than that to which it originally appertained. The important question in regard to the alley in this case is this : Has the defendant made it appurtenant to his other property? Has he surcharged it, so to speak? If he makes a thoroughfare of it he is making an excessive use of it. The defendant denies that he so uses it. He says that he uses his Locust street property not only as a bakery, but as a place of assorting and packing his bread, and claims a legal right to do so. On due reflection and consideration of the evidence, I find that the defendant is using his Locust street property and alley just the same as any other person would use it in the conduct of a business. His wares are brought to the Locust street store, assorted and packed there and carried out through the alley to the wagons. If, instead of baking bread, he bought it and had it delivered in his store, he might lawfully deliver it to his customers by way of the alley. So would he if he kept a milk house instead of a bakery. While the bill contains an allegation that flour barrels are placed in the alley, yet there is no evidence to sustain this allegation. I, therefore, find that the defendant is not chargeable with an unlawful use of the alley.

The complaint as to the use of the plaintiffs' sidewalk for the purpose of loading defendant's wagons is more substantial. I visited and viewed the property so that, besides the testimony

of the witnesses, I had an ocular demonstration that injury has been done to the tree boxes in front of plaintiffs' property by the shafts of the defendant's wagons. The wagons have two wheels and are loaded from the front, the horses' heads being turned directly towards the sidewalk. Then the wagons are loaded from the plaintiff's sidewalk as well as the defendant's. If this were done occasionally, or on some extra occasion, it might be submitted to and would not be a good cause for interference by a court, but when it is done continually, day after day, then it becomes an appropriation of the plaintiffs' property by the defendant for the purposes of his business, an invasion of the plaintiffs' right of property, and a ground for intervention of a court of equity. As to the smell caused by the horses, I do not find that to be such as to call for an injunction. The defendant has a right to load his wagons in front of his own property, and standing horses will cause smells which have to be endured, because they cannot be prevented. As to the noise, while the evidence is nearly in equilibrium between the parties, and I do not find against the defendant in that regard, yet a neighborly feeling should induce the defendant to regulate his employees so that his business should be conducted with as little noise as possible. There does not appear to be about the business of a bakery anything which should cause disturbing noises to people in the neighborhood, and as his business is more active at a time when other people are in bed, he should endeavor to avoid all unnecessary noise which would disturb them in their slumbers, otherwise he may be subjected to an indictment, and, on conviction, to an injunction which may seriously interfere with his business.

Unless exceptions are filed within ten days, a decree will be entered in accordance with this adjudication.

The following decree was entered:

And now, July 16, 1898, this cause came on to be heard at this time, on exceptions filed both by plaintiffs and defendant to the adjudication of the equity trial judge, and was argued by counsel, and thereupon upon consideration thereof the said exceptions were dismissed, and it is ordered, adjudged and decreed:

1. That the defendant is not chargeable with the unlawful use of the alley or passageway between the premises of plain-

tiffs and defendant, and the injunction prayed for in respect thereof is refused.

2. That the defendant, Jules Junker, his agents, servants and employees be and they hereby are perpetually enjoined and restrained from continually using the sidewalk in front of premises No. 1235 Locust street, in the city of Philadelphia, for the purpose of loading the wagons used by him in his business.

3. That the injunction prayed for in the third prayer of the bill is refused as not sustained by the evidence.

4. That each party pays his own costs and that the record costs be divided equally between the parties.

*Error assigned* was the decree of the court.

*Thomas Ridgway* and *John B. Thayer*, for appellants.—The character and extent of a use is fixed by the user by which it was gained: Washburn on Easements, 117; Kirkman v. Sharp, 1 Wharton, 323; McCallum v. Germantown Water Co., 54 Pa. 40.

If a man has a right of way over another's land he cannot enlarge or extend it to other closes, and this, whether it be by user or by deed: Shroder v. Brenneman, 23 Pa. 348; Kirkham v. Sharp, 1 Wh. 323; Lewis v. Carstairs, 6 Wh. 207.

Defendant should be enjoined from disturbing the plaintiff by excessive noises: Sanderson v. Penna. Coal Co., 86 Pa. 401; Bellamy v. Wells, 60 L. J. Ch. 156; Bartlett v. Marshall, 44 W. R. 251; Mott v. Shoolbred, L. R. 20 Eq. Cas. 22; Rex v. Russell, 6 East, 427; Rex v. Cross, 3 Campbell, 224; Benjamin v. Storr, L. R. 9 C. P. 400; Harris v. Mobbs, L. R. 3 Exch. Div. 268; Wilkins v. Day, 12 L. R. Q. B. D. 110.

Among the cases in which injunctions have been granted by the lower courts in Pennsylvania for noise arising from a proper and legitimate business are: Dennis v. Eckhardt, 3 Grant, 390; Wallace v. Auer, 10 Phila. 356; Harrison v. St. Mark's Church, 3 W. N. C. 384; Briggs v. Vottler, 4 W. N. C. 272; Ladies' Decorative Art Club's App., 22 W. N. C. 75.

*Alex. Simpson, Jr.*, with him *James L. Stanton*, for appellee. —Defendant contends that the use of the alley may be such as the premises may reasonably be put to from time to time, so

long as it does not interfere with the plaintiffs' use, and is not made appurtenant to any other property : Dark v. Johnston, 55 Pa. 164; Gunson v. Healy, 100 Pa. 42; Jamison v. McCredy, 5 W. & S. 129; Greenmount Cemetery Co.'s Appeals, 4 Atl. Rep. 528; 4 Sharswood & Budd's Leading Cases in the American Law of Property, 212; Holt v. Sargent, 15 Gray, 97; McElhone v. McManes, 118 Pa. 600; Herman v. Roberts, 119 N. Y. 37; Klaer v. Ridgway, 86 Pa. 529; Lewis v. Carstairs, 6 Wh. 193; Watson v. Bioren, 1 S. & R. 227; Ehret v. Gunn, 166 Pa. 384.

It is admitted that for twenty-nine years before bill filed this alley was used for business purposes, with the knowledge of plaintiffs. From this the law implies a grant of the right so to use it: Gehman v. Erdman, 105 Pa. 371; Lewis v. Carstairs, 6 Wh. 193.

The complaint that defendant uses the street in which to stand his wagons while loading is easily disposed of. Every business man is compelled to do this, and his right to do so temporarily is settled by Welsh v. Wilson, 2 Cent. Rep. 739; Price v. Grantz, 118 Pa. 403; Cox's App., 11 W. N. C. 571; Pittsburg, etc., Ry. Co. v. Cheevers, 149 Ill. 430; Jacksonville, etc., R. R. Co. v. Thompson, 26 L. R. A. 410; Inhabitants of Charlotte v. Pembroke Iron Works, 8 L. R. A. 828; Brotherton Bros. v. Reynolds, 164 Pa. 139.

It is well settled that he who lives in a populous city must expect to endure the noises and other discomforts thereof, and cannot be heard to complain: Tipping v. St. Helens Smelting Co., 116 E. C. L. R. 608; Rhodes v. Dunbar, 57 Pa. 287; Huckenstine's App., 70 Pa. 102; McCaffrey's App., 105 Pa. 253; Elverson's App., 41 Leg. Int. 418.

Plaintiffs' right is disputed upon every ground upon which it is placed and has not been established at law: Quinn's App., 10 Cent. Rep. 350; Rhea v. Forsyth, 37 Pa. 503; City of New Castle v. Raney, 130 Pa. 546.

Defendant has expended large sums in the enlargement of this highly necessary business, and would suffer a most grievous injury, while plaintiffs would gain but little, if anything, by the grant of an injunction, the delay in applying for which is unreasonable: Richards's App., 57 Pa. 105.

OPINION BY MR. JUSTICE DEAN, March 27, 1899:

The facts of this case are fully set out in the opinion of the learned judge of the court below. There was no restriction in the deeds of the adjoining properties as to the use of the alley by either tenant: it was intended by the original owners as a common passageway for the occupants of both properties. True, when the common easement was created, both properties were dwellings; but it would be an unreasonable assumption that it was to be forever used by both only as a convenience to housekeepers; it might not unreasonably be used in the future to promote the convenience of either or both for a business not per se a nuisance, which could be carried on in buildings of such size located at that point. It is clear, however, that one occupant could not by the use of the alley so obstruct it as to prevent its reasonable use in view of the original purpose by the adjoining occupant. The court below has found as a fact that plaintiffs have not been deprived of the reasonable enjoyment of the easement by the conduct of defendant in carrying on his bakery. Taking this as a fact, the injunction to restrain him in the use of the alley was properly refused. But the evidence shows, and the court finds, that defendant does a very large business; loads from his property daily twenty-nine wagons drawn by horses, and twenty-seven push carts. As his own frontage on Locust street is too narrow for this volume of business, he practically occupies the street in front of his neighbor's residence with his horses and vehicles and the sidewalk with his baskets, during the early hours of the day. This, the court finds is unlawful, and therefore defendant is enjoined from "continually" using his neighbor's sidewalk in that manner. We think the restraining order does not go far enough. He has no more right to use the sidewalk of plaintiffs for conducting his particular business, than if the common alley way had no existence. No property owner, no matter what the necessities of his trade, has the right to use the sidewalk in front of his neighbor's private residence for business purposes; he not only has not the right to use it continually, he has no right to use it at all for such purpose. If the front of his own property is too narrow for his expanded business, he must get a broader one, lawfully, at some other point. We, therefore, enlarge the scope of the decree by striking from the second clause of it the word "continually" and it will then stand thus :

2. The defendant, Jules Junker, his agents, servants and employees be and they are hereby perpetually enjoined and restrained from, at any time, using the sidewalk in front of premises No. 1235 Locust street, for the purpose of loading the wagons or other vehicles used by him, and further, from using the frontage along the sidewalk of said premises as a standing place for horses and wagons used by him in conducting his said business.

The decree as thus enlarged is affirmed.