**Asher L. WHEELER, Appellant,**

v.

**Jean M. LYNCH, Appellee.**

**No. 81–252.**

District of Columbia Court of Appeals.

Argued March 17, 1982.

Decided May 6, 1982.

Jerome Shuman, Washington, D. C., for appellant.

Mark P. Friedlander, Jr., Washington, D. C., for appellee.

Before KELLY, KERN and PRYOR, Associate Judges.

PER CURIAM:

This is an appeal from a judgment which placed a series of restrictions on appellant's use of the reciprocal easement shared by his property with the adjoining property of appellee. Because we find that these restrictions are reasonable given the nature of the easement, we affirm.

Asher L. Wheeler, appellant herein, and Jean M. Lynch, appellee, own adjoining lots in an area of Georgetown in Washington, D. C. On both lots are buildings containing retail commercial establishments on the first floor and residences on the second and third floors. Between the houses is a tunnel-like passageway which is three feet in width and nine feet in height. Part of each building is over the archway, and exactly one and a half feet of the three-foot passage belongs to each lot. A deed dated April 17, 1912, created an easement of one and a half feet as to each lot. The instrument stated that this was to be a "right of way in common, forever, over and through an alley three feet wide."

Since its creation, the easement has been used primarily for the residential uses of the two lots, but appellant Wheeler has often used the passageway to accommodate the commercial uses of his property. Appellee uses the easement primarily as the means of access to her trash can.

When appellee learned of appellant's plans to erect a new building behind the one already present on his lot, she brought an action seeking a declaratory judgment as to limitations on use of the easement for construction purposes. At trial, appellee contended that appellant would enlarge the intended use of the easement by allowing the ingress and egress of workmen, materials, supplies, and equipment to the building site by way of the passageway. Appellant, on the other hand, asserted his right to use the easement without any restriction.

Following trial, the court entered an order which concluded that appellant's proposed use of the passageway for the transportation of materials, tools, and equipment for construction of the building was a proper use of the easement, *provided that* the use conformed to the following restrictions:

1. . . . [T]his use is limited to a period of one year from the date the actual construction work begins.

2. That during the period of the construction of the building, the use of the easement for the transportation of materials and equipment shall be limited to the hours of 9:30 a. m. to 11:30 a. m. and 2:00 p. m. to 4:00 p. m. weekdays.

3. That the defendant shall maintain the passageway free from such trash or debris that results from its use during construction or thereafter from commercial use.

4. That any damage caused to the passageway interfering with plaintiff's reasonable use shall be promptly repaired by the defendant and not wait until the end of construction.

5. That the defendant or his tenants, or the guests and invitees of the defendant or his tenants, may use the passageway as a means of ingress and egress for residential or commercial purposes; however, the passageway shall not be used to provide ingress or egress for commercial purposes except between the hours of 8:00 a. m. and 8:00 p. m.

6. That the gate on the front of the passageway is to be locked at all times from 9:00 p. m. to 6:30 a. m. and if the gate is removed during those periods set forth in paragraph 2 [permitting construction passage] it must be replaced to permit locking. [Record at 150 (footnote omitted).]

Appellant now contends that these restrictions are improper. Focusing on the general terms of the grant of 1912 which created the easement, he maintains that the court's order places restrictions on the easement not contemplated by the original grant and that these restrictions are unreasonable and are not based on the evidence.

■ A grant of an easement in general terms without restriction is available for all reasonable uses to which the dominant estate may be devoted. *E.g., Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc.,* 86 U.S.App.D.C. 58, 179 F.2d 64 (1949); *Laux v. Freed,* 53 Cal.2d 512, 2 Cal.Rptr. 265, 348 P.2d 873 (1960); *Sharp v. Silva Realty Corp.,* 86 R.I. 276, 134 A.2d 131 (1957). The use of the easement at the time of its creation does not *absolutely* limit its future use. Thus, some courts have allowed the use of an easement for commercial purposes in certain situations even though that easement was used previously only for residential purposes. *E.g., Cushman Virginia Corp. v. Barnes,* 204 Va. 245, 129 S.E.2d 633 (1963); *Benner v. Junker,* 190 Pa. 423, 43 A. 72 (1899).

■ The use of an easement created by a general grant, however, is not without limitation. The right of way cannot be used in a manner that would burden the servient estate to a greater extent than was contemplated or intended at the time of the grant. *Cushman Virginia Corp. v. Barnes, supra; Wall v. Rudolph,* 198 Cal.App.2d 684, 18 Cal.Rptr. 123, 3 A.L.R.3d 1242 (1961); *Doody v. Spurr,* 315 Mass. 129, 51 N.E.2d 981 (1943). The use of the easement is not one of unlimited use, but one of unlimited *reasonable* use. In examining the question of whether the use is reasonable, one must consider the invasion of the servient landowner's rights that may result from increased or changed use, as well as the potential obstruction of the dominant estate owner's enjoyment of his estate which could

be caused by restrictions on use of the easement. *See Cushman Virginia Corp. v. Barnes, supra; Wall v. Rudolph, supra; Swensen v. Marino,* 306 Mass. 582, 29 N.E.2d 15 (1940); *Davis v. Jefferson County Tel. Co.,* 82 W.Va. 357, 95 S.E. 1042 (1918). The propriety of a particular use is determined by the specific circumstances involved in that case. *See Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc., supra* (determination of reasonableness is question for trial court); *Crullen v. Edison Electric Illuminating Co.,* 254 Mass. 93, 149 N.E. 665 (1925).

▪ Turning to the present case, we find that there are two special circumstances involved here which justify restrictions on appellant's intended use of the easement. First, we note that this is a reciprocal easement. Allowing appellant full unrestricted use of the passageway would conflict not only with appellee's enjoyment of her property, but also with appellee's use of the shared easement. More important, the unique physical characteristics of the passageway cannot be ignored. The easement, a tunnel of only three feet in width and nine feet in height, is bordered not only on both sides but also above by the buildings of appellant and appellee. The residence of appellee is directly over appellant's easement, and the passageway's entrance is on a busy city street. Given the nature of this reciprocal easement, it is a reasonable conclusion that appellee's property and her own easement will bear to a great extent the impact of the increased use of the easement, with the attendant increase in noise level, dirt, and other potential disturbances.

To protect the interests of appellee in enjoying her property, while still accommodating appellant's right to use the easement in service of a proper use of his estate, the trial court fashioned the contested restrictions on appellant's transportation of materials and equipment via the easement. Our review of the record persuades us that the trial court properly weighed the facts of this case in determining these restrictions to be reasonable. We conclude that it was an appropriate exercise of discretion for the court, sitting in equity, to grant appellee this relief, in lieu of the full injunction that was requested. *See generally Giles v. Luker,* 215 Minn. 256, 9 N.W.2d 716 (1943); *Benner v. Junker, supra.* The ordered time limitations will mitigate the burden on appellee's property of increased traffic on the easement, while still allowing appellant to complete the new building on his property.[1] We note, however, that if circumstances, unforeseen by the trial court, arise in the future and make it impossible for appellant to comply with the restrictions and at the same time complete the proposed building, appellant may at that time move the court for relief.

Finding that the trial court correctly applied the law regarding easements by a general grant and further finding that the restrictions imposed are justified in light of the facts of record in this case, we affirm.

*So ordered.*

---

1. It is these time limitations, restricting transportation of materials and equipment to the hours of 9:30 a. m. to 11:30 a. m. and 2:00 p. m. to 4:00 p. m. weekdays and limiting the period of such use to one year, on which appellant focuses his objections. We note that appellee's counsel conceded during oral argument that these restrictions would not preclude individual workmen carrying tools from using the easement during other hours and that the record reflects that there is another means of ingress and egress to the rear of appellant's property.

Appellant also adamantly contests the requirement that the already existing gate at the entrance of the passageway be locked from 9:00 p. m. to 6:30 a. m. This requirement does not improperly impair appellant's right of ingress and egress, as appellant maintains. It is clear that this restriction will aid in minimizing potential burdens to appellee's estate and easement due to appellant's increased use of the passageway, and we are unconvinced that this will affect appellant's interests adversely.